BOSTON SAFE-DEPOSIT & TRUST CO. v. AMERICAN RAPID TEL. CO.

(Circuit Court, D. Connecticut. April 27, 1895.)

No. 481.

LACHES, WHAT CONSTITUTES—DELAY OF STOCKHOLDER TO INTERVENE IN FORE-CLOSURE SUIT.

In a suit to foreclose a mortgage on corporate property, a stockholder appeared for the first time when the cause was pending before a master on the application of the receiver for the distribution of the fund and a settlement of his accounts, and objected to the distribution of any money to the holders of the mortgage bonds on the ground that the mortgage was invalid. The suit had then been pending over nine years, and the corporation itself had previously set up the same defenses. A supplementary suit had also been brought, in which the validity of the mortgage had been thoroughly contested. Prior to the commencement of the foreclosure suit, the stockholder himself had brought a suit to cancel the mortgage; but, upon the denial of his motion for the appointment of a receiver, had taken no further action therein. *Held,* that he was guilty of laches, and could not maintain his objections.

This was a suit by the Boston Safe-Deposit & Trust Company against the American Rapid Telegraph Company for the foreclosure of a mortgage, and the appointment of a receiver and other relief. The cause was heard upon exceptions to the master's report upon the settlements of the accounts of the receiver.

Edward Harland, in pro. per.
Wilson & Wallis, in support of master's report.
James H. Macreary, for D. F. Robeson.

SHIPMAN, Circuit Judge. To the report of William Waldo Hyde, Esq., appointed master in chancery to receive and ascertain the amount of claims against the funds now in the receiver's hands for distribution, and to ascertain the parties to whom said fund should be distributed, and the amount due to each, respectively, Daniel F. Robeson and the receiver, Gen. Edward Harland, have each filed exceptions.

Mr. Robeson, being the holder of 10 shares of the stock of the American Rapid Telegraph Company, objected before the master

to the distribution of any of the money in the hands of the receiver to any bondholders secured by the forclosed mortgage, on the grounds: First, that the bonds were issued without warrant of law; and, second, that they were illegally and improperly used in the exchange for purchase of stock of the same company, and that the holders of said bonds are not entitled to participate in the distribution of the fund or to receive any portion thereof. The master disallowed his claim, but allowed his right to share in the distribution as the holder of 10 shares, or $1,000 of the stock, to the same extent as if he were the holder of a bond for that amount.

The three points made by Mr. Robeson before the master were as follows:

"Point 1. The contract entered into on the 26th day of August, 1883, between the American Rapid Telegraph Co. and the Bankers' and Merchants' Telegraph Co., and the contract dated the 29th day of August, 1883, entered into between the Bankers' and Merchants' Telegraph Co. and George S. Bullens, were not made in good faith, and hence were not binding on the minority stockholders of the American Rapid Telegraph Company, who did not ratify it.

"Point 2. The use to which the three million dollars of bonds issued out of agreement of August 28, 1883, between the American Rapid Telegraph. Co. and the Bankers' and Merchants' Telegraph Co., were put, was illegal.

"Point 3. Mr. Robeson has an undoubted right to appear and object to the distribution of proceeds ordered by the decree herein, in his own name, in case of the absence of corporate action or of the disability of the corporation to act in his behalf."

### The claim was treated by the master in his report as follows:

"Each of these points was argued at considerable length, but as, in my opinion, the questions suggested under the third point are decisive of Mr. Robeson's rights, and as the questions suggested by points one and two have already been fully presented to this court in the present litigation, and decided adversely to the claims now made in Mr. Robeson's behalf, I will confine myself simply to point three. I find that, shortly before the bill was filed in this foreclosure suit, Mr. Robeson filed a bill in the circuit court for this circuit, in the Southern district of New York, and moved for the appointment of a receiver for the American Rapid Telegraph Company. In that bill he raised the same objections which he suggests and raises here, and asks that the mortgage be canceled, and that the Boston Safe-Deposit and Trust Company, as trustee therein, be enjoined from taking any proceedings. I find also that in this present litigation the American Rapid Telegraph Company itself, by its directors and officers, defended against the foreclosure suit, and also against the relief claimed in the supplementary suit in New York state, and raised these very questions; that in these suits the issues were fully presented and thoroughly tried, and decided adversely to the claims set up here. I find, therefore, that Mr. Robeson had full opportunity, had he so desired, to have secured a legal determination of these claims in the first instance, in his own suit; that he had full knowledge of the pendency of this foreclosure suit, and could, if he had seen fit, have intervened for the protection of his interests during the progress of the litigation therein. And I further find that, having thus slept on his claimed rights during all this period, he has now no right in equity or in law to set up these claims in the manner in which he has attempted to do so, and that he is bound by the decision of the courts in this suit. I therefore disallow in the whole his claim."

To the bill of foreclosure in this case against the American Rapid Telegraph Company, divers parties were made defendants, among them the Bankers' & Merchants' Telegraph Company. These two corporations, or the parties who controlled their action as corpora-

tions, vigorously opposed the foreclosure. The Rapid Company filed an answer, setting forth, with great minuteness, the particulars of illegality and fraudulent conduct in the scheme of the mortgage, upon which Mr. Robeson also relies. When the receiver was appointed, no property was in the possession of the Rapid Company, but was entirely in the possession of the Bankers' & Merchants' Company, or the purchasers therefrom under a claim of ownership and of freedom from any lien in favor of the complainant. The property in New York was put into the possession of the receiver of the Rapid Company, leaving the various questions of title to be thereafter settled; and the active litigation was thereupon conducted with great vigor on both sides in the circuit court for the Southern district of New York, in a suit in aid of the foreclosure suit, between the present plaintiff and the Bankers' & Merchants' Telegraph Company and divers other defendants, including the Rapid Company, to determine the title to the property claimed by the receiver. A lengthy opinion was given by Judge Wallace (36 Fed. 288), in which the good faith of the trustees to the mortgage was sustained against the objections of the Bankers' & Merchants' Company and its successors, and upon appeal the decree of the circuit court was affirmed by the supreme court of the United States at the October term, 1892 (147 U. S. 431, 13 Sup. Ct. 396). After this affirmance, the validity of the mortgage was apparently considered by the parties to the Connecticut foreclosure suit to be at rest. A decree for the sale of the mortgaged property had been entered in 1890. The property was sold about March, 1891, but no deed was given until 1894. When the receiver, having received about $911,000, and having in his hands, after his payments, a fund of about $694,000, brought his application for a settlement of his account and a distribution of the fund, which application was granted by order dated August 9, 1894, Mr. Robeson appeared, for the first time, as a litigant in this suit, before the master, on September 28, 1894. The original bill was filed March 23, 1885. It further appears that, before this time, Robeson had filed a bill in the circuit court for the Southern district of New York, in which he prayed for the cancellation of the mortgage, and that the present complainant, as trustee under the mortgage, be enjoined from taking proceedings to enforce it, and moved for the appointment of a receiver of the Rapid Company. His motion was denied. Since this litigation commenced, his suit appears to have slept.

It thus appears that the objections which Mr. Robeson now urges against the validity of this mortgage were presented in the answer of the Rapid Company, in which he was a shareholder; were made the vital questions in the supplementary suit in New York; and that he never intervened in this suit, or made any application therein, until after the deed of the property had been given, and more than nine years after the litigation commenced. It is idle to contend that Robeson was ignorant of the existence of this suit. It seems unnecessary to pursue the subject further. The exceptions of Robeson are overruled.

Gen. Harland, having presented his bill as receiver at the rate of $6,000 per annum, of which he had received $44,000, excepts to the finding of the master allowing him for his services the sum of $45,000. The receiver was appointed on account of his fitness for the perplexing work of establishing the complainant's title to the mortgaged premises, and making the bonds of pecuniary value. I think that during the early years of his service he was entitled to compensation at the rate of $6,000 per annum, but that during the later years, while his time has been at the command of the complainant in this litigation, he ought not to receive at the same rate, because the labor and responsibility and amount of thought to be given to the subject had diminished.

There being no exception by any person to the allowance of as much as $45,000, no useful purpose would be served by going into the details of the legal contest in various states, as to title, which finally came to a close with the affirmance by the supreme court of the circuit court's decree. The receiver's exception is overruled, and the report of the master is confirmed.